FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 28 2010

P.M. ___
TIME A.M. ___

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ERNEST CRAWFORD,

                Petitioner,

— against —

PEOPLE OF THE STATE OF NEW YORK,

                Respondent.
----------------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-4760 (SLT)

**TOWNES, United States District Judge:**[1]

On July 2, 2004, Ernest Crawford ("Petitioner") was convicted after a jury trial of criminal possession of a weapon in the third degree. On July 21, 2004, the trial court sentenced Petitioner to a prison term of five years and three years of post-release supervision. The conviction was affirmed on appeal by the New York Appellate Division in *People v. Crawford*, 832 N.Y.S.2d 254 (N.Y. App. Div. 2007). On June 13, 2007, the New York Court of Appeals denied Petitioner's application for leave to appeal further. *People v. Crawford*, 840 N.Y.S.2d 768 (N.Y. 2007). By *pro se* petition filed October 11, 2007, Petitioner now seeks a writ of habeas corpus under 28 U.S.C § 2254. For the reasons stated below, this petition for habeas relief is denied.

## BACKGROUND

On October 30, 2003, Lieutenant Werner Hellman and Police Officers Richard Pignatelli, Herbert Martin and Edward Deighan, all members of the New York City Police Department, were driving an unmarked vehicle in the vicinity of Amboy Street between Sutter and Blake Avenues in Brooklyn. At about 10:50 p.m., the officers saw a group of approximately fifteen to

---

[1] The Court gratefully acknowledges the assistance of a student intern, Jeremy Hutcher of Georgetown University Law Center, in the preparation of this Memorandum and Order.

1

twenty people on the street yelling, as if a fight had just occurred. Officer Pignatelli stopped the car and pulled over to the right side of the street near the crowd. Shortly thereafter, Officers Pignatelli and Martin observed two men who were standing apart from the crowd next to one another on the left side of the street. The officers were parked about "four car lengths" away from the two men. Trial Tr. 53:23.[2] Officers Pignatelli and Martin watched as one man handed a gun to the other man, who was later identified as Petitioner. Upon seeing the gun, Officer Martin announced to the other officers in the car that he had seen a gun and Officer Pignatelli sped up the car towards the two men, who began to flee in opposite directions.

Petitioner fled into 178 Amboy Street, a building down the block from Petitioner's home of 199 Amboy Street. Officer Martin saw the gun in the Petitioner's hand as he entered the building. After a pursuit up a flight of stairs, Officers Martin and Deighan restrained Petitioner inside. Officer Pignatelli came up the stairs and removed the gun from Petitioner's right side. While the officers were placing Petitioner under arrest, Petitioner stated repeatedly that the gun was not his and that someone had handed it to him. At the station, Petitioner was interviewed by Detective Sherman Austin, a member of the Brooklyn North Trigger Lock Unit. Detective Austin's duties included interviewing individuals who had been arrested with guns in order to find out if the gun could be traced to the original place of purchase. Detective Austin introduced himself to Petitioner and explained that he was there to see if Petitioner could be federally prosecuted, and that there was a chance that Petitioner could end up in prison. Detective Austin read Petitioner his *Miranda* rights and Petitioner indicated that he understood his rights by signing a *Miranda* card. After being read his rights, Petitioner revealed that he wanted to make a

---

[2] "Trial Tr." refers to the transcript of Crawford's state court trial. "Suppression Hr'g Tr." refers to the transcript of Crawford's suppression hearing, held June 23, 2004.

2

statement. Petitioner stated that a friend had given him the gun to give to another person. He provided no additional information about who gave him the gun.

At a pre-trial suppression hearing, the court found that the testimony of Officer Martin was credible. Specifically, the court found that Officer Martin's testimony pertaining to his observation of the exchange of the weapon from an unidentified man to Petitioner was credible. The court also determined that Detective Austin's testimony was credible in that proper *Miranda* warnings were given and that Detective Austin did not threaten Petitioner into waiving his rights.

At trial, the jury convicted Petitioner of possession of a weapon in the third degree and he was sentenced to a term of five years imprisonment and three years of post-release supervision.

### *Petitioner's Motion to Set Aside His Sentence*

On January 3, 2007, Petitioner moved to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20.[3] Petitioner claimed that although the sentencing court had explicitly imposed three years of post-release supervision, a clerk had amended the commitment order to reflect the legal minimum term for second felony offenders of five years of post-release supervision. On March 5, 2007, the Supreme Court of Kings County granted Petitioner's motion. The court determined that although the three year term of post-release supervision was illegally low, the trial court's oral sentence of three years of post-release supervision must stand. *People v. Crawford*, 832 N.Y.S.2d 781, 782 (N.Y. Sup. Ct. 2007); *see also Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006), *reh. denied* 462 F.3d 147 (2d Cir. 2006) (holding that the oral sentence constitutes the judgment of the court and that any penalty added to a judge's sentence is invalid unless the judge personally amends the sentence).

---

[3] New York Criminal Procedure Law permits a defendant to move to set aside a sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law. N.Y. Crim. Proc. Law § 440.20. Nevertheless, an order setting aside a sentence pursuant to this section does not affect the validity or status of the underlying conviction. *Id.*

3

*Petitioner's Direct Appeal*

Petitioner appealed from his judgment of conviction to the New York Appellate Division. On appeal, Petitioner claimed that the prosecution failed to prove that he was guilty beyond a reasonable doubt because the testimony of each law enforcement witness was incredible. Petitioner submitted a supplemental *pro se* brief, which also challenged the credibility of the officers' testimony.

The prosecution argued that Petitioner's claim regarding the sufficiency of the officers' testimony was not preserved for appellate review. In any event, the prosecution maintained, the prosecution's evidence was legally sufficient and the verdict was not against the weight of the evidence.

On March 13, 2007, the Appellate Division affirmed his conviction. *People v. Crawford*, 832 N.Y.S.2d 254 (N.Y. App. Div. 2007). The Appellate Division held that Petitioner's claim challenging the sufficiency of the evidence was unpreserved for appellate review, and in any event, without merit because the jury could reasonably conclude that the evidence presented at trial proved Petitioner's guilt beyond a reasonable doubt. *See id.*

On June 13, 2007, the New York Court of Appeals denied Petitioner's application for leave to appeal that decision.

***The Instant Petition***

Petitioner timely filed the instant petition for a writ of habeas corpus on October 11, 2007, raising two issues: (1) that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt because the officers' testimony against him was incredible and (2) that his Fourth Amendment rights were violated because the police did not have a legal basis to stop him and recover the gun from his person.

Respondent asserted that Petitioner's claim challenging the proof of his guilt was barred from review because: (1) an adequate and independent state ground existed for affirming the conviction and (2) in any event this claim would be without merit. Respondent also argued that Petitioner's Fourth Amendment claim was procedurally barred from federal review because: (1) the claim was unexhausted, as the Appellate Division ruled only on the legal sufficiency claim and (2) *Stone v. Powell*, 428 U.S. 465 (1976), procedurally bars Petitioner's Fourth Amendment claim because Petitioner fully and fairly litigated that claim at the pre-trial suppression hearing.

In response, Petitioner claimed that the Appellate Division did not specifically address the legal sufficiency claim raised in his *pro se* brief, and that, therefore, this claim was preserved for review. Petitioner further maintained that his Fourth Amendment rights were violated because the officers did not have probable cause to search him and that therefore both the gun and any statements he gave upon being stopped were tainted by the officers' unlawful search and seizure.

The Court now turns to these claims.

## DISCUSSION

### I. Standard of Review

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an individual in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Under the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), courts will only grant a habeas petition where the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1) - the "contrary to" clause -- a federal habeas court may grant the writ "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Court. *Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under § 2254(d)(2) - the "unreasonable application" clause -- a federal habeas court may grant the writ if the state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' [sic] of the petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring).

## II. Sufficiency of the Evidence Claim

### A. Petitioner's Legal Sufficiency Claim is Procedurally Barred

Petitioner argues that the evidence used to convict him was legally insufficient to convict him. Nevertheless, Respondent correctly contends that this claim is procedurally barred because

6

Petitioner failed to preserve it for appellate review. Under New York State's contemporaneous objection rule, in order to preserve a claim challenging a court's ruling or instruction for appellate review, a party must register a protest "at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. L. § 470 .05(2); *see also People v. Lopez*, 71 N.Y.2d 662, 665 (N.Y. 1988). The purpose of this rule is "to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so it may be dealt with at that time." *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). Federal courts have recognized the "contemporaneous objection requirement" as "a firmly established independent and adequate state procedural bar." *Gomez v. Brown*, 655 F. Supp. 2d 332, 355 (S.D.N.Y. 2009) (citing *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.")).

At trial, Petitioner failed to raise a sufficiency objection at the close of the prosecution's case. After the prosecution rested, the defense did move for a dismissal of Petitioner's charge for failure to "prove a prima facie case." Trial Tr. 237:1. Petitioner's counsel argued that under the charge of possession of a weapon in the third degree, the prosecution had the burden of proving not only that Petitioner had knowingly possessed a weapon, but also that Petitioner knew that the weapon was loaded. *Id.* at 237-38. The trial court, however, denied the motion. *Id.* at 241. Notably, Petitioner's motion to dismiss was brought *not* on a claim that the evidence presented by the prosecution was legally insufficient to establish that he ever possessed a firearm, but rather only on whether the prosecution had established that Petitioner was aware that the gun was loaded. *See id.*

7

New York law requires that "'even where a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be specifically directed at the alleged error.'" *Donaldson v. Ercole*, No. 06-5781-pr, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009) (quoting *People v. Hines*, 736 N.Y.S.2d 643 (N.Y. 2001)); *see also Farino v. Ercole*, No. 07-CV-3592, 2009 WL 3232693, at *8-*9 (E.D.N.Y. Sept. 30, 2009).

On direct appeal, the Appellate Division held that "[Petitioner's] argument that the testimony of the People's witnesses was incredible as a matter of law, and therefore that the evidence was legally insufficient, is unpreserved for appellate review, as the defendant's motion to dismiss was based on a different argument." *Crawford*, 832 N.Y.S.2d at 255. The Appellate Division's decision, therefore, constituted an "independent . . . and adequate" state ground for affirming the conviction. *See Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006) (internal quotation marks omitted). Specifically, when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim based on a procedural default ordinarily qualifies as an independent and adequate state ground for denying federal review. *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Nevertheless, not every failure to contemporaneously object prohibits federal habeas review. *See Monroe*, 433 F.3d at 244. Rather, before a state procedural bar may effectively bar a federal habeas claim, a federal habeas court must be satisfied that the specific procedural ground is "adequate to support the judgment." *Id.* at 240-41 (internal quotation marks omitted); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). To satisfy this inquiry, federal habeas courts look to whether "the state rule at issue . . . is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Garvey*, 485 F.3d at 714).

The inquiry focuses on three "guideposts" which help courts measure "the state interest in a procedural rule against the circumstances of a particular case." *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 386-87 (2002)). The *Cotto* guideposts ask:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Clark*, 510 F.3d at 391 (quoting *Cotto*, 331 F.3d at 240). If the habeas court finds that the state procedural ground is adequate to support the judgment, the petition must fail unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Acosta*, 575 F.3d at 184 (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).[4]

New York's contemporaneous objection rule has been found to be a "firmly established and regularly followed New York procedural rule," and noncompliance with the rule precludes federal habeas review absent a finding that such treatment would be "exorbitant" under the *Cotto* guideposts. *Garvey*, 485 F.3d at 718; *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007); *Cherry v. Walsh*, No. 09-CV-1452, 2009 WL 2611225, at *9-10 (E.D.N.Y. Aug. 25, 2009).

As to the first *Cotto* guidepost, the question of whether the trial judge "actually relied on" the procedural default "is less applicable in this case because the lack of a contemporaneous

---

[4] A petitioner can establish a "fundamental miscarriage of justice" through "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must show that "it is more likely than not that no reasonable juror would' have convicted him in light of the new evidence." *Id.* at 327. Nevertheless, the Supreme Court has emphasized that this exception must be "rare" and be applied only in the "extraordinary case." *Id.* at 299 (internal quotation marks omitted).

9

objection would not, almost by definition, be mentioned by the trial court." *Cotto*, 331 F.3d at 242; *see also Karimzada v. Cunningham*, No. 09-CV-3317, 2010 WL 5979471, at *3 n.1 (E.D.N.Y. Feb. 17, 2010). Furthermore, the issue of whether perfect compliance would have changed the outcome, "is less relevant" in evaluating the failure to preserve a claim. *Stewart v. Greene*, No. 05 Civ. 0566, 2009 WL 4030833 at *15 (S.D.N.Y. Nov. 19, 2009) (quoting *Ashley v. Burge*, No. 05 Civ. 4497, 2006 WL 3327589, at *5 (S.D.N.Y. Nov. 3, 2006)). As noted by the Second Circuit, "the likely impact of a timely objection involves a certain degree of speculation." *Cotto*, 331 F.3d at 243; *see also Donaldson v. Ercole*, No. 06-5781-pr, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009).

As to the second *Cotto* guidepost, New York courts have consistently required compliance with the contemporaneous objection rule in other cases where petitioners failed to object to the sufficiency of the evidence at trial. *See People v. Hines*, 736 N.Y.S.2d 643 (N.Y. 2001); *see also Flores v. Ercole*, No. 06-CV-6751, 2010 WL 1329036, at *6 (E.D.N.Y. Mar. 31, 2010); *Farino v. Ercole*, No. 07-CV-3592, 2009 WL 3232693, at *8-*9 (E.D.N.Y. Sept. 30, 2009).

Turning to the third *Cotto* guidepost, Petitioner did not "substantially comply" with the contemporaneous objection rule, and his failure to raise this specific ground for dismissal before the trial judge precluded appellate review. *See Hines*, 736 N.Y.S.2d at 647. Petitioner's motion to dismiss for the failure to prove a prima facie case challenged only one specific element of the charge—whether the prosecution had sufficiently proven that Petitioner had *knowingly* been in possession of a loaded firearm. The motion to dismiss did not seek to have the charges dismissed because the evidence against Petitioner was legally insufficient. Petitioner's counsel had the opportunity to raise the specific argument that the evidence against him was legally

insufficient because the testimony of the police officers testimonies was incredible when it would have been "uncomplicated and straightforward" to do so. *See Monroe v. Kuhlman*, 433 F.3d 236, 245 (2d Cir. 2006) (discussing that compliance with a state procedural rule is "uncomplicated" when it would require the mere voicing of an objection at trial). Furthermore, Petitioner has not asserted any cause or prejudice in connection with his failure to preserve this claim. Nor has he demonstrated a fundamental miscarriage of justice.

Petitioner's claim that the Appellate Division did not address this claim as raised in the Petitioner's supplemental *pro se* brief is also without merit. Petitioner's *pro se* brief merely raised the same challenges to the officers' credibility that were raised by his appellate counsel, and the Appellate Division's ruling specifically mentions these challenges. *See Crawford*, 832 N.Y.S.2d at 255. Accordingly, Petitioner's sufficiency claim is procedurally barred because the failure to preserve his claim was an "independent . . . and adequate" state ground to support the conviction. *Monroe*, 433 F.3d 236, 240-41 (2d Cir. 2006) (internal quotation marks omitted).

### B. Petitioner's Legal Sufficiency Claim Fails on the Merits

Even if it were not procedurally barred, Petitioner's insufficiency claim would fail on the merits. A petitioner raising an insufficiency claim bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotation marks omitted); *see also United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). While "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)), "[f]ederal courts are not forums in which to relitigate state trials." *Lonchar v. Thomas*, 517 U.S. 314, 340 (1996) (Rehnquist, J., concurring) (quoting *Barefoot v. Estelle*, 463

11

U.S. 880, 887 (1983)). As such, a federal habeas court is not permitted "to make its own subjective determination of guilt or innocence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (internal quotation marks omitted). Rather, when inquiring into sufficiency, a habeas court "must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179. The operative inquiry, then, "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added).

When reviewing a case for legal sufficiency, a court may not "disturb the jury's findings with respect to [a witness'] credibility" about testimony presented at Petitioner's trial. *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989); *see also United States v. Delva*, 282 F. App'x 89, 91 (2d Cir. June 24, 2008).

At trial, two officers testified that they had observed Petitioner accept a gun handed to him by an unidentified man. Trial Tr. 25-27, 122-23. Officer Martin indicated that he saw a gun by saying "gun" to his partners. *Id.* at 125. Officer Pignatelli stated that when he sped up the car after seeing the gun, Petitioner fled into 178 Amboy Street. *Id.* at 28. Officer Martin testified that he saw the gun in Petitioner's hand as Petitioner was fleeing into the building. *Id.* at 159. Officers Martin and Deighan restrained Petitioner inside the building and placed Petitioner under arrest. *Id.* at 174. Officer Pignatelli then came up the stairs and removed the gun from Petitioner's right pocket. *Id.* at 24. After recovering the gun from Petitioner, Officer Pignatelli testified that he then found that the gun had six rounds of ammunition inside. *Id.* at 34.

Two officers also testified that as they were placing Petitioner under arrest, Petitioner stated repeatedly that the gun was not his and that someone had just handed it to him. *Id.* at 31. After the arrest, the officers transported Petitioner to the police precinct. *Id.* The officers swore

that they did not ask him any questions and that Petitioner did not request an attorney. *Id.* at 31, 129. At the precinct, Detective Austin arrived to interview Petitioner. *Id.* at 180-81. Detective Austin testified that he introduced himself to Petitioner, explained that he was there to see if Petitioner could be federally prosecuted, and told him that there was a possibility that he could end up in prison. *Id.* at 183-187. Detective Austin stated that he then read Petitioner his *Miranda* rights. *Id.* at 186-87. Petitioner indicated that he understood his rights and gave both oral and written statements. *Id.* at 188-90. In his statements, Petitioner stated that he was given a gun by another man, but provided no additional information about who had given him the gun. *Id.*

While Petitioner argues that it would have been impossible for the officers to have seen the gun handoff from the distance that separated them from Petitioner, a federal habeas court may not "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)); *see also Martin v. Brown*, No. 08-CV-0316, 2010 WL 1740432, at *9 (E.D.N.Y. Apr. 29, 2010). This Court must view the officers' testimony in a light most favorable to the prosecution and construe all permissible inferences stemming from the testimony in its favor. *See United States v. Morgan*, 287 F. App'x 922, 924 (2d Cir. July 25, 2008) (citing *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998)).

Petitioner's argument that the evidence against him was insufficient to prove his guilt beyond a reasonable doubt because the officers put on conflicting testimony is without merit. In support of this claim, Petitioner argues that Officer Martin's trial testimony contradicted his testimony at the suppression hearing with respect to where the car was parked when he first

13

observed Petitioner. Nevertheless, at both the suppression hearing and trial, Officer Martin stated that he observed Petitioner to the left of where he was sitting in the vehicle. Suppression Hr'g Tr. 20-21; Trial Tr. 149-52. Petitioner also claims that because Officer Pignatelli testified that the officers' car was double-parked, while Officer Martin testified that the car was parked next to the curb, neither was credible. Petitioner, however, even admitted that the contradiction here is a "less significant detail." Pet. App. Brief at 9.[5] Although there may have been some discrepancy between the two, it is well established that "the credibility of witnesses is the province of the jury and [courts] simply cannot replace the jury's credibility determinations with our own." *United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000). Neither testimony was patently incredible. While Petitioner pointed out possible reasons to doubt their credibility, the jury was free to believe their version of events. Thus, the officers' testimony was sufficient to prove Petitioner's guilt and Petitioner's claim that the prosecution's evidence was legally insufficient fails on the merits.

## III. Fourth Amendment Claim

### A. Petitioner's Fourth Amendment Claim Is Deemed Exhausted and Procedurally Defaulted

Petitioner next claims that his Fourth Amendment rights were violated because the officers did not have probable cause to search for the gun, and, therefore, the gun should be suppressed as the fruit of the poisonous tree. A federal court may not grant habeas relief to a prisoner in state custody unless the prisoner has exhausted his state court remedies. *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005); *see also* 28 U.S.C. § 2254(b)(1). Exhaustion means that the prisoner no longer "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To satisfy this requirement, "state

---

[5] "Pet. App. Brief" refers to Petitioner's brief to the Appellate Division, submitted Feb. 24, 2006.

14

claim. While "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see Pehzman v. City of New York*, 812 N.Y.S.2d 14, 18 (N.Y. App. Div. 2006), Petitioner's supplemental *pro se* brief contains no language that implies an allegation of an illegal search and seizure. Rather, the brief focuses on the credibility of the officers' testimony and the sufficiency of the evidence against him. *See* Pet. App. Brief. at 1.[7] Even construing Petitioner's *pro se* brief liberally, it is clear that Petitioner wanted to draw attention to specific inconsistencies in the officers' testimony. His arguments were not rooted in the Fourth Amendment. Because Petitioner's Fourth Amendment claim was not fairly presented to the Appellate Division, this claim is, therefore, unexhausted.

Nevertheless, when a petitioner has not presented a claim to a state court, but the claim is procedurally barred under state law, "the habeas court theoretically has the power to deem the claim exhausted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). But as the Second Circuit has explained:

> This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted.

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. at 735 n.1). Because Petitioner no longer has a state forum in which to raise this claim, the Court deems this claim exhausted and procedurally defaulted.

Furthermore, Petitioner has not advanced a showing of cause and prejudice sufficient to establish that he should be relieved of his state procedural default. Nor has Petitioner contended that his continued incarceration would amount to a "fundamental miscarriage of justice." *See Acosta*, 575 F.3d at 184. The miscarriage of justice exception has a "narrow scope," *see Spence*

---

[7] "Pet. App. Brief" refers to Petitioner's supplemental pro *se* appellate brief, dated Apr. 19, 2006.

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Galdamez*, 394 F.3d at 73 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "In New York, [one complete round requires] a criminal defendant [to] first appeal his or her conviction to the Appellate Division, and then [to] seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74. Nevertheless, a habeas court must also ask whether the petitioner "'*properly* exhausted those [state] remedies, *i.e.*, whether [petitioner] has *fairly presented* his [or her] claims to the state courts,' such that the state court had a fair opportunity to act." *Galdamez*, 394 F.3d at 73 (quoting *O'Sullivan*, 526 U.S. at 848). When a petitioner's leave to appeal letter specifically requests review of only one claim, any other claim may be deemed procedurally defaulted. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). A federal habeas court may not consider claims that have not been exhausted by fair presentation to the state courts, *see* 28 U.S.C. § 2254(b)(1); *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (citing *Baldwin v. Reese*, 541 U.S. 27, 29, (2004)), unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Acosta*, 575 F.3d at 184 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Petitioner's leave to appeal letter argued only an insufficient evidence claim, and not a Fourth Amendment claim. Pet. Leave Application.[6] Petitioner also argues that the Appellate Division did not consider the supplemental *pro se* brief filed upon Petitioner's direct appeal. Petitioner claims that this brief contained language which raised a Fourth Amendment

---

[6] "Pet. Leave Application" refers to Petitioner's letter applying for permission to appeal to the New York Court of Appeals, dated Mar. 22, 2007.

15

*v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 171 (2d Cir. 2000), and is not warranted here.

### B. Petitioner's Fourth Amendment Claim Is Barred from Habeas Review Under *Stone v. Powell*

Even if Petitioner's claim were not procedurally defaulted, it would still fail because the claim is otherwise barred. In his second ground for habeas relief, Petitioner argues that the hearing court should have suppressed the gun as well as Petitioner's statements as the fruits of an unlawful search and seizure. Petitioner implies that the hearing court's decision was contrary to clearly established Federal law, as determined by the Supreme Court in *Dunaway v. New York*, 442 U.S. 200 (1979) and *Mapp v. Ohio*, 367 U.S. 643 (1961). In *Dunaway*, the Court held that statements given by a suspect who is arrested without probable cause must be suppressed. 442 U.S. at 225. Under *Dunaway*, such statements are suppressed pursuant to the "exclusionary rule," which is used to effectuate the Fourth Amendment, and without regard to whether such statements are voluntarily made. *Id.* at 226. In *Mapp*, the Court held that physical evidence obtained by law enforcement officers against a criminal seized in violation of the Fourth Amendment is barred by the "exclusionary rule." 367 U.S. at 657.

In *Stone v. Powell*, 428 U.S. 465 (1976), however, the Supreme Court explained that the considerations which support the implementation of the exclusionary rule at trial and its enforcement on direct appeal of state-court convictions do not require extension of the exclusionary rule to the habeas context. The *Stone* Court found "no reason to believe . . . that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions," and no "reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were

the further risk that a conviction . . . might be overturned in collateral proceedings." *Id.* at 493. Accordingly, the *Stone* Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Id.* at 494.

To be sure, Fourth Amendment claims may be raised in the context of a habeas petition "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Nevertheless, this case presents neither of those situations. In this case, Petitioner was not precluded from using a corrective procure for addressing Fourth Amendment violations as he was granted a *Dunaway/Mapp* hearing, at which he was given a full opportunity to argue that he was arrested without probable cause and that the statements he made at the precinct should have been suppressed as fruits of his unlawful arrest. Indeed, Petitioner does not allege that he was not given a full and fair opportunity to litigate the *Dunaway* or *Mapp* issues, but instead faults the decision reached by the court following that hearing. Since Petitioner has failed to show a lack of State corrective procedures or a breakdown in the underlying process, this claim for habeas relief must be denied. *See Simpson v. West*, No. 05-CV-2279, 2006 WL 1367412, at *5 (E.D.N.Y. May 18, 2006); *see also Ortiz v. Ercole*, 07-CV-4667, 2010 WL 1688444, at *2 (E.D.N.Y. Apr. 26, 2010) (a habeas petitioner's claim that the officers who arrested him lacked probable cause to do so was not cognizable in a habeas proceeding in which the trial court provided the petitioner a full and fair opportunity to litigate the claim at a *Dunaway* hearing).

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and this action is dismissed. Since Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability is granted with respect to any of petitioner's claims. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

_____
SANDRA L. TOWNES
United States District Judge

Dated: June 24, 2010
Brooklyn, New York